**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JASON WHITE,

        **PLAINTIFF,**

VS.                                                         **CASE NO. CV 07 491 WPJ/DJS**

A.J. SEDLER, J.B. YARA,
DAVID HINSON, AND
CITY OF ALBUQUERQUE,

        **DEFENDANTS.**

**PLAINTIFF JASON WHITE'S RESPONSE TO
DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF MELVIN TUCKER**

COMES NOW, Plaintiff Jason White, by and through his counsel, Louren Oliveros and

Mark Pustay of Gorence & Oliveros, P.C., and hereby responds to Defendants' Motion to

Exclude Testimony of Melvin Tucker and Memorandum in Support Thereof, [Docs. 37 & 38],

filed on May 19, 2008.  Mr. White responds as follows:

FACTUAL BACKGROUND

On the morning of November 20, 2005, Defendant Sedler responded to a call from the

Diamond Shamrock regarding an African-American Male. While investigating the call,

Defendant Sedler suspected the male to be Jason White.  Although Defendant Sedler determined

that Mr. White had not committed a crime at the Diamond Shamrock, Defendant Sedler began

searching the area for Mr. White.  Defendant Sedler then conducted a query for any outstanding

warrants for the name "Jason White."  There was, however, no warrant for the Plaintiff.

Meanwhile, Plaintiff Jason White was sitting in his parked Ford Explorer in an empty parking lot

behind the Style America in Albuquerque, New Mexico.  Mr. White was peaceably eating his breakfast and quietly listening to music.  Defendants Sedler and Hinson approached Mr. White and demanded that he exit his vehicle.  Upon approaching Mr. White, Defendants Sedler and Hinson told Mr. White there was a warrant for his arrest, though none existed.  Mr. White asked for proof of a warrant, but received no response.  Instead, Defendants Sedler and Hinson broke out the windows to Mr. White's vehicle and forced him to exit.  Once Mr. White exited the vehicle, the Defendants kicked Mr. White in the legs, and struck him with a baton.  Defendant Yara tased him multiple times.  Mr. White was violently taken to the ground and forcefully held face-down by Defendant Hinson.

Mr. White was handcuffed and taken into custody.  Mr. White was transported to Presbyterian Kaseman hospital, where he was treated for his injuries.  Mr. White sustained substantial temporary and permanent injuries from the conduct of the Defendants.  He also sustained permanent scarring to his back as a result of the taser deployment.  All of the charges filed against Mr. White were later dismissed.

On May 18, 2007, Mr. White filed the Complaint in this matter against Individual Defendants Sedler, Hinson and Yara, as well as the City of Albuquerque.  [Doc. 1].  On May 19, 2008, Defendants filed a Motion and Memorandum in Support to Exclude the Testimony of Melvin Tucker, [Docs. 37 and 38], a witness Mr. White has retained for the purposes of offering his expert testimony in this matter in the area of police procedures.

ARGUMENT

I.     <u>Mr. Tucker's testimony will not usurp the province of the jury or of the Court</u>.

Defendants request exclusion of Mr. Tucker's testimony under Federal Rule of Evidence

702 and contend that Mr. Tucker's anticipated conclusions will usurp the province of the jury

and the Court. [Doc. 38 at 2-3].  In support, Defendants argue that Mr. Tucker 's opinion as to

the reasonableness of Defendants' use of oloresin capsicum, a baton and a taser contradicts the

legal standards set forth in *Graham v. Connor*, 490 U.S. 386 (1989), but fails to note in any

manner how this opinion contradicts the *Graham* decision.  *Id*. at 3.  Defendants also claim that

Mr. Tucker's conclusion that alternative means were available to address the situation does not

render the Defendants' conduct unreasonable. *Id*.

Federal Rule of Evidence 702 establishes the appropriate role for expert testimony.  Rule

702 states:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact at issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702

The main concern regarding expert witness testimony is whether the testimony will assist

the trier of fact in understanding the evidence presented, or whether the testimony will help the

fact finder determine a fact in issue.  *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988), *cert*

*denied*, 488 U.S. 1008 (1989). When it is said an expert's testimony is limited as to opinions on

ultimate issues of law, an expert may not state opinions as to legal standards, nor may the expert

state legal conclusions by applying the law to the facts of the instant case.  *Christiansen v. City*

*of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003), *quoting Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998). "There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge…To allow anyone other than the judge to state the law would violate the basic concept." *Specht*, 853 F.2d at 807, *quoting* STOEBUCK, *Opinions on Ultimate Facts: Status, Trends, and a Note of Caution*, 41 Den.J.Cent.J. 226, 237 (1964). When it is said an expert cannot invade the province of the jury, generally an expert witness cannot testify so as to direct a particular conclusion as to an ultimate issue of law. *United States v. Jensen*, 608 F.3d 1349, 1356 (10th Cir. 1979).

While an expert generally cannot direct ultimate issues of law, an expert may offer testimony to assist the fact finder in deciding ultimate issues of fact. *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007). Expert testimony is appropriate when the matters on which the expert testimony is offered help a fact finder of normal experience and qualification decide a matter in which technical knowledge, skill, experience or education in that particular field is necessary to understand an ultimate issue of fact. *Campbell v. Clark*, 283 F.2d 766, 768 (10th Cir. 1960). The keystone test as to the admissibility of expert testimony, however, is whether the jury is unable to judge for themselves as well as the witness can judge, and the simple fact that the witness offers testimony on an issue to be decided by the jury does not make the expert's opinion evidence inadmissible. *United States v. Bowman*, 73 F.2d 716, 720 (10th Cir. 1934).

Mr. Tucker's offered testimony is within the range of acceptable matters for expert testimony, will assist the fact finder with matters beyond common knowledge, and will not invade the province of the fact finder by offering ultimate opinions of law. First, the matters on which Mr. Tucker is prepared to offer expert testimony are matters outside the province of

common knowledge.  Specifically, Mr. Tucker intends to offer his highly specialized opinion on police procedure, specifically probable cause and the use of force.  To this end, Mr. Tucker is well-qualified to offer expert testimony.  Mr. Tucker's experience is second to none; he has held the title of Chief of Police for four different metropolitan areas and has served as a special agent for the Federal Bureau of Investigations.  Mr. Tucker's knowledge and education in police procedures is equally distinguished; he conducts training seminars in the use of force, he has published numerous articles on police procedure, and has consistently served as a professor of criminal justice since 1972.  See Affidavit, attached as Exhibit A, along with appendices A through Ex. A.  Mr. Tucker's expert report details matters outside the common juror's knowledge, namely the amount of probable cause necessary under similar circumstances, the officers' compliance with basic law enforcement training (BLET) as to identification for warrant purposes, compliance with generally accepted directives as to the use of force, and the appropriate use of OC spray and the taser.  See Expert Report, attached as Exhibit B, 5-9.  See also Ex.A, ¶¶15-16.  Second, Mr. Tucker's expert report explicitly limits itself to a specialized field, namely police procedure, and makes no attempt, directly or indirectly, to apply legal precedent, Tenth Circuit or otherwise, to the facts of Mr. White's case.  Mr. Tucker's expert report does not direct specific jury findings; rather, Mr. Tucker's expert report details the bases for his opinions that the Individual Defendants used techniques and a degree of force contrary to BLET and generally accepted standards.  See Ex. A and B.  In doing so, Mr. Tucker uses a specific methodology.  He uses a set of assumed facts taken from the perspective of the Defendants and applies those facts to his understanding of police procedure.  See Ex. A, ¶12 and appendix c to Ex. A.  See also Ex. B.

Additionally, whether Mr. Tucker's opinions establish the Defendants' excessive and unreasonable conduct is a matter for the fact finder to decide, and Defendants argument that their actions in using OC spray were not unreasonable goes to the weight to be given such testimony, not to the admissibility of said testimony.  If Mr. Tucker qualifies as an expert by knowledge, skill, experience, training or education, Mr. Tucker may, at the Court's discretion, appropriately offer testimony pursuant to Federal Rule of Evidence 702 so as to assist the trier of fact to understand the evidence or to determine a fact in issue.  The weight to be given Mr. Tucker's testimony is distinct from the ultimate admissibility of Mr. Tucker's testimony. *See for example, In re Joint Eastern & Southern Dist. Asbestos Litigation*, 52 F.3d 1124,1132 (2nd Cir. 1995) ("The 'admissibility' and 'sufficiency' of scientific evidence necessitate different inquiries and involve different stakes.  Admissibility entails a threshold inquiry over whether a certain piece of evidence ought to be admitted at trial…A sufficiency inquiry…asks whether the collective weight of a litigant's evidence is adequate to present a jury question.")

Furthermore, Mr. Tucker's expert opinion that the Albuquerque Police Department failed to ensure that its officers maintained appropriate certification with deliberate indifference to citizens who may come into contact with APD officers has direct relevance to Mr. White's claim against the City of Albuquerque for negligence.  Mr. White has properly pled a negligence claim against the City of Albuquerque, by and through their agents and employees, the Individual Defendants, for the breach of their duty to protect Mr. White from assault, battery, false arrest, and false imprisonment. [Doc. 1,¶¶ 42-50].  Contrary to Defendants' assertions, Mr. Tucker's opinions as to the City's actions are directly relevant to Mr. White's claim for negligence, and are admissible.

II.     <u>The probative value of Mr. Tucker's testimony outweighs any conceivable prejudice Mr. Tucker's testimony may produce.</u>

Defendants' fail to show any prejudice Mr. Tucker's testimony may produce.  Instead, Defendants cite the bare assertion that because the incident is heavily fact dependent, any expert testimony would invade the province of the jury. [Doc. 38, 4-5].  This point is simply a restatement of Defendants' first argument.  The party moving for exclusion under Fed.R.Evid. 403 bears the burden to demonstrate that the evidence to be excluded would produce unfair prejudice.  *E.E.O.C. v. BCI Coca-Cola Bottling Company of Los Angeles*, 2008 WL 2229489, *5 (D.N.M. 2008).  Defendants fail to explain how Mr. Tucker's testimony will produce any degree of unfair prejudice.  Indeed, given Mr. Tucker's methodology there is no prejudice here because the Defendants will have the opportunity to cross-examine Mr. Tucker with any version of facts,.  See Ex. A, ¶ 12 and Appendix C.  Since they fail to show any prejudice, Defendants have not satisfied their burden under Fed.R.Evid. 403, and their argument fails.

Even considering the Defendants' failure to identify a particular prejudicial effect, the probative value of Mr. Tucker's testimony far outweighs any prejudice Mr. Tucker's testimony may produce.  The Tenth Circuit has recognized that excluding evidence under Fed.R.Evid. 403 that is otherwise admissible on the basis that the danger of unfair prejudice, confusion, or waste of time outweighs the probative value of said evidence is an extraordinary remedy, and such exclusion is an option that should be used sparingly. *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996).  In conducting the Rule 403 balancing test, the Court "should give the evidence

its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000).

      Giving Mr. Tucker's testimony its "maximum reasonable probative force and its minimum reasonable prejudicial value" per *Deters*, the probative value of Mr. Tucker's testimony strongly outweighs the potential for prejudice his testimony could conceivably produce.  Specifically, Mr. Tucker intends to present expert opinions on matters outside the common knowledge of the typical juror, namely the type of probable cause necessary under circumstances similar to the instant events, which actions are within generally accepted police practices and which actions exceed BLET and generally accepted standards of police procedure. See Ex.A, ¶¶15-16, and Ex. B, 5-9.  These are matters beyond the common knowledge of the typical juror; the typical juror is unfamiliar with probable cause standards, BLET and generally accepted standards of police procedure, particularly with regard to warrant checks, and the acceptable use of force, OC spray and tasers.  *Id.* This testimony is directly relevant to ultimate issues in the case, and will not produce any unfair prejudice to the Defendants, nor will the testimony produce undue delay, a waste of time, or be unnecessarily duplicative.  See Fed.R.Evid. 403.  As such, the probative value of Mr. Tucker's testimony outweighs any conceivable prejudice his testimony may produce, and Defendants' effort to exclude Mr. Tucker's testimony under Fed.R.Evid. 403 must fail.

CONCLUSION

WHEREFORE, Plaintiff asks this Court to deny Defendants' Motion to Exclude the

Testimony of Melvin Tucker and for whatever other relief this Court deems just and necessary.

Respectfully submitted,


Electronically filed: 06/30/08
LOUREN OLIVEROS
MARK PUSTAY
Gorence & Oliveros, P.C.
201 12th St. NW
Albuquerque, NM 87102
(505) 244-0214 (phone)
(505) 244-0888 (facsimile)


I HEREBY CERTIFY that a true and correct copy of the foregoing has been emailed by
CM/ECF to counsel entitled to notice, this 30th day of June, 2008.

Electronically Filed: 06/30/08
Louren Oliveros

9